# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL B., | No. ED CV 20-00656-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

In 2016, Michael B. ("Plaintiff") applied for Social Security Disability Insurance Benefits, alleging disability beginning June 2, 2015. See Dkt. 15, Administrative Record ("AR") 15.[1] After the claim was denied initially and on reconsideration, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). See AR 30-60, 91-95, 98-103.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ denied Plaintiff's claim by written decision on February 20, 2019. See AR 12-24. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of June 2, 2015, through his date last insured of March 31, 2017. See AR 17. At step two, the ALJ determined that Plaintiff had the severe impairments of "major joint disorder of the bilateral shoulders, degenerative disc disease of the cervical and lumbar regions, and obesity." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 18.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he could do the following: "frequently balance, climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally climb ropes, ladders, and scaffolds; frequently reach with the bilateral upper extremity; and occasionally reach overhead with the bilateral upper extremity." AR 18-19. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. See AR 22. At step five, the ALJ relied on the testimony of a vocational expert to conclude that someone with Plaintiff's RFC could perform jobs that exist in significant numbers in the national economy, including counter supply worker (Dictionary of Occupational Titles or "DOT" 319.687-010), food service worker (DOT 319.677-014), and merchandise deliverer (DOT 299.477-010). See AR 22-23. Consequently, the ALJ concluded that Plaintiff was not disabled. See AR 23-24.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## III.   DISCUSSION

The parties dispute whether the ALJ properly evaluated the opinions of Plaintiff's treating physicians. See Dkt. 18, Joint Stipulation ("JS") at 2.

### A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). When a treating or examining physician's opinion is uncontradicted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by

3

substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). To meet this burden, the ALJ "must do more than offer his conclusions." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted). "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. (citation omitted). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 416.927(c).

## B.   Opinions of Plaintiff's Physicians

### 1.   Opinion of Treating Physician Dr. Khalid Ahmed

On June 26, 2015, Plaintiff saw Dr. Khalid Ahmed for an initial orthopedic evaluation in connection with a workers' compensation claim. See AR 315. Dr. Ahmed noted that Plaintiff was injured at work when he reached overhead to retrieve some boxes that weighed approximately 50 pounds. See AR 316. At the evaluation, Plaintiff reported that "on reaching up . . . he felt a sharp pain in his neck and mid back" and "later began to experience sharp pain in his shoulders and elbows." Id. Dr. Ahmed noted a second injury 6 days after the first when Plaintiff went to retrieve a scale saw that weighed approximately 20 pounds and "felt immediate pain in his mid and lower back, with immediate radiating pain going down his legs." Id. Plaintiff reported that he was unable to perform his usual job duties and had been terminated. See id.

Dr. Ahmed concluded that Plaintiff was temporarily totally disabled. See AR 327. He reached this conclusion after recording Plaintiff's description of his pain and examining and taking measurements of Plaintiff's cervical, thoracic, and lumbar spine, shoulders, elbows, wrists and hands, hips, knees,

calves, ankles, and feet. See AR 316-25. The impression had four parts:
"[c]ervical spine strain/sprain rule out herniated cervical disc with
radiculitis/radiculopathy"; "[b]ilateral shoulders strain/sprain rule out
tendinitis, rotator cuff tear, internal derangement, and impingement
syndrome"; "[b]ilateral elbows strain/sprain rule out tendinitis, medial or
lateral epicondylitis"; and "[l]umbar spine strain/sprain rule out herniated
lumbar disc with radiculitis/radiculopathy." AR 325. Dr. Ahmed prescribed
physiotherapy focusing on the cervical and lumbar spine, bilateral shoulders,
and bilateral elbows. See AR 326. He also prescribed medications for pain,
muscle spasms, and inflammation. See AR 326-27. He noted that if Plaintiff
continued to complain of pain despite the prescribed course of treatment, then
MRIs and other tests of the affected areas would be considered. See AR 327.

### 2.   Opinion of Treating Physician Dr. David Fisher

Plaintiff saw Dr. David Fisher at least six times for his injuries. See AR
339-57. His first visit was in October 2015. See AR 354. During that visit,
Plaintiff complained of "throbbing, burning and stabbing [pain] in his back
with associated stiffness, numbness, tingling, weakness, swelling, locking,
giving way, snapping and popping," and rated his pain at the time "at a 9 or
10" on a scale from 1 to 10. Id. Dr. Fisher assessed the pain in Plaintiff's
cervical spine as "moderate, diffuse, radiating, spasmodic, with numbness,
increas[ing] with use and worse at night." AR 356. He also assessed the pain in
Plaintiff's lumbosacral spine as "moderate, constant ache, pain accumulat[ing]
with activity [and] increas[ing] with sustained postures." Id. However, he
assessed the muscle strength and tone in Plaintiff's upper extremities as 5 of 5.
See id. He noted that both upper extremities had "normal range of motion
without pain [or] instability." Id. He further noted that Plaintiff had "normal
gait and station and normal posture." Id. He opined that Plaintiff was limited

to "[m]odified duties with no lifting greater than 10lbs and no bending or reaching above shoulder height." AR 357.

In March 2016, Dr. Fisher again examined Plaintiff. He noted that MRIs of Plaintiff's spine and shoulder revealed multiple level degenerative joint disease and a herniated disc in his cervical spine, multiple level canal stenosis and three herniated discs in his lumbar spine, as well as acromioclavicular arthritis in his shoulder joints and partial tears of his rotator cuffs. See AR 345. He again noted that Plaintiff's posture and gait were normal. See id. He limited Plaintiff to "25 lbs lifting and no lifting or reaching above shoulder height bilaterally." AR 346. In April 2016, Dr. Fisher assessed that Plaintiff should "[c]ontinue modified duty w/no lifting greater than 15 lbs." AR 343.

On August 29, 2016, Dr. Fisher described Plaintiff's arthrogram results from April of that year as showing "impingement [of] both shoulders with [acromioclavicular] joint arthritis and downsloping of [the] acromi[on] without [a] rotator cuff tear." AR 339. He also noted that "[degenerative joint disease] [was] seen in [the] lumbar and cervical spine." Id. He again noted that Plaintiff's posture and gait were normal. AR 340. He continued to limit Plaintiff to "no lifting or reaching above shoulder height," but for the first time he did not include any general restriction on the weight Plaintiff could lift so long as Plaintiff kept the weight below shoulder height. Id.

### 3.    Opinion of Examining Physician Dr. Vicente Bernabe

In July 2016, Plaintiff saw Dr. Vicente Bernabe for a complete orthopedic consultation. See AR 334-38. Dr. Bernabe reviewed a report from a previous consultation in 2014 but did not review any other medical records. See AR 334. In general, Dr. Bernabe found that Plaintiff was not in any "acute or chronic distress . . . [and] moved freely in and out of the office and around the examination room without the use of any assistive device." AR 335. As to the cervical spine, he found "no significant tenderness to palpation," "no

visible or palpable spasm," and a range of motion that was "full and painless." Id. Likewise, as to the lumbar spine he found "no significant tenderness to palpation," "no spasm," and a range of motion that was "full in all planes without pain." AR 336. In the left shoulder he found "no significant tenderness to palpation," and in both shoulders he found the range of motion "full and painless" with "no instability." Id. Based on his findings, Dr. Bernabe reported impressions of cervicalgia and lumbago, but assessed no functional limitations on Plaintiff's ability to lift, reach, or perform any postural movements. See AR 337-38.

**C.   Analysis**

The ALJ considered but gave "little weight" to the work restrictions given by Dr. Fisher with respect to lifting objects of greater than 25 or 15 pounds, overhead reaching, and bending. AR 21. The ALJ gave two reasons: they "appear[ed] to be short-term restrictions that changed with each visit, and the overall record d[id] not support them." Id. As examples of the lack of record support, the ALJ pointed out that Dr. Bernabe's examination was "normal" and that Plaintiff's pain questionnaire from the same month describes him as performing "many daily activities without assistance." Id.

The ALJ's first reason for giving the work restrictions little weight, that they appeared short-term and inconsistent from visit to visit, is not a specific and legitimate reason supported by substantial evidence. Together, Dr. Ahmed and Dr. Fisher assessed restrictions that included Plaintiff lifting no more than 25 pounds for a period of more than 14 months. See AR 327, 340. Dr. Fisher's restrictions on Plaintiff's lifting were imposed at every visit for a period of more than six months, see AR 343, 346, 349, 352, 357, with the last restriction indicating that Plaintiff should "continue modified duty w/no lifting greater than 15lbs," AR 343. At Plaintiff's next visit in August 2016, Dr. Fisher limited Plaintiff to "no lifting or reaching above shoulder height." AR 340. The

record thus does not reflect that Plaintiff's restrictions were either short-term or inconsistent. Rather, they were persistent and limited Plaintiff's ability to lift and reach with his shoulders for more than 14 months.

The ALJ's second reason was that the "overall record" did not support the treating physicians' work restrictions. But the ALJ was required to offer more than just conclusions to support this justification, and neither rationale given is persuasive. The ALJ offered as one rationale Plaintiff's responses in a July 2016 pain questionnaire. See AR 21. But the ALJ's suggestion that the questionnaire was inconsistent with the work restrictions found by Plaintiff's treating physicians is not supported by substantial evidence. Plaintiff reported that his usual daily activities at that time were "walking, shopping, household chores, driving, socializing, etc." AR 220. None of these activities necessarily requires lifting or reaching with the shoulders. And the record provides no details suggesting that those daily activities undermined the limitations stated by his treating physicians. Accordingly, Plaintiff's reported daily activities are not substantial evidence inconsistent with the treating physicians' restrictions. See Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017) (holding that absent specific details about a claimant's daily activities, those activities cannot constitute substantial evidence inconsistent with the opinion of a claimant's treating physician).

The other rationale was Dr. Bernabe's July 2016 examination. See AR 21. But Dr. Bernabe did not review Plaintiff's MRI results from April 2016 that showed arthritis and rotator cuff tears in both shoulder joints. And although Dr. Bernabe found Plaintiff had a full range of motion in his shoulders, he did not explicitly address Plaintiff's ability to lift or reach overhead. While the ALJ summarized the facts and clinical evidence from several doctors and made findings, see AR 19-20, the ALJ failed to explain why his interpretation that Plaintiff could lift up to 50 pounds was correct, rather than Dr. Fisher's

interpretation that Plaintiff could not.[2] Nor did the ALJ explain why Plaintiff could reach with his shoulders frequently and overhead occasionally, a combination of limitations that no doctor had offered. Accordingly, Dr. Bernabe's assessment was not a sufficient reason to assign little weight to Dr. Fisher's restrictions. See Orn, 495 F.3d at 632-33; Weiskopf v. Berryhill, 693 F. App'x 539, 541 (9th Cir. 2017) ("The ALJ failed to explain why the conclusion she drew . . . makes any more sense than the treating physicians' conclusions.").

Stripped of the examples discussed above, the ALJ's second reason for giving little weight to Dr. Fisher's restrictions reduces to the assertion that "the overall record does not support them." AR 21. That assertion is impermissibly vague. See Kinzer v. Colvin, 567 F. App'x 529, 530 (9th Cir. 2014) (holding that the ALJ erred in rejecting treating physicians' opinions where the ALJ stated only that the opinions "contrasted sharply with the other evidence of record" and were "not well supported by . . . objective findings"); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that the medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required"). While there may be a legally sufficient basis to give little weight to the treating physicians' restrictions, the ALJ did not rely on one. And this Court "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

Accordingly, the Court finds that the ALJ erred in evaluating the opinions of Plaintiff's treating physicians. Remand is necessary to allow the

---

[2] The ALJ determined that Plaintiff could perform "medium work," which includes lifting 50 pounds at a time. See 20 C.F.R. § 404.1567(c). The ALJ put some limits on Plaintiff's capacity to perform medium work but none on how much weight he could lift. See AR 18-19.

ALJ to either explain his reasoning in rejecting the treating physicians' opinions or credit those opinions and incorporate their findings into Plaintiff's RFC.

## IV.    REMAND IS WARRANTED

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the district court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, the Court finds that remand is the appropriate remedy to allow the ALJ to reconsider the opinions of Plaintiff's treating orthopedic specialists. The ALJ may also conduct such other proceedings as are warranted.

## V.    CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the case is REMANDED.

IT IS SO ORDERED.


Date:  April 20, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge